UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| AARON, MACGREGOR & ASSOCIATES and FUTURE INTERNATIONAL, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO. 3:15-CV-00254-PPS-CAN |
| ZHEJIANG JINFEI KAIDA WHEELS CO., LTE., FUTURE INDUSTRIAL & TRADING, INC., and BINGZAO GE, | ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This case is about a business deal that never quite got going but has left one side of the deal feeling ripped off. Aaron Zou, President and founder of Aaron, MacGregor & Associates, LLC (AMA for ease of reference), is in the business of buying and selling vehicle parts for resale. He was approached by Bingzao Ge, the Chairman of a Chinese company named Jinfei Kaida Wheels Co., which was in the business of manufacturing vehicle parts. Zou, on behalf of AMA, and Ge, on behalf of Jinfei came together to form Future International, LLC. The goal was for AMA to assist Jinfei in expanding its market in the United States, starting with a recreational vehicle market in the Elkhart area. Despite three contracts for the funding, development, and management of Future International, the deal fell apart.

AMA claims that Jinfei used AMA for its business contacts and then surreptitiously created its own corporation in Indiana with a similar sounding name to

1

Future International— Future Industrial & Trading, Inc. According to the complaint, Future Industrial employs many of the same individuals whom AMA introduced to customers as being part of Future International when AMA believed the parties were working together to create and grow Future International. AMA believes that these facts, along with the fact that both companies operate in the same geographic market, has created customer confusion. This action, brought by AMA and Future International, alleges breach of the three contracts, breach of fiduciary duty, unjust enrichment, unfair competition, and trademark infringement. The Defendants seek dismissal of the first amended complaint for failure to state a claim. For the following reasons, the Defendants' motion will be denied.

## Background

The facts come from the complaint which I accept as true for present purposes. AMA was founded approximately ten years ago and is in the business of purchasing vehicle parts, including wheel casings, for resale to retailers. [DE 14 at ¶¶1, 8.] Aaron Zou is the President and founder of AMA and has more than twenty years of experience buying and selling recreational vehicles and other motor vehicle products. [*Id.* at ¶8.] In early 2011, Zou traveled to China on behalf of AMA for a business conference. [*Id.* at ¶9.] At the conference, Zou met the Chairman of Jinfei, Bingzao Ge. [*Id.*] Jinfei is in the business of manufacturing vehicle parts, including aluminum alloy wheel casings. [*Id.* ¶3.] Zou and Ge discussed how AMA could assist Jinfei in expanding its recreational vehicle market in Elkhart, Indiana. [*Id.* at ¶9.]

2

After the 2011 meeting, Zou returned to Indiana and the parties continued to communicate via email. [*Id.* at ¶10.] The parties agreed that AMA would establish a new company called Future International, LLC in Elkhart, Indiana. [*Id.* at ¶10.] Future International was created and registered with the state of Indiana on December 9, 2011. [*Id.* at ¶11.] In February of 2012, Zou returned to China to meet with Ge. [*Id.* at ¶12.] On February 26, 2012, Jinfei and AMA executed two-contracts. [*Id.*] The first contract was the Investment Contract, under which Jinfei would invest $270,000 into Future International (for 90% of the company) and AMA would invest $30,000 (for 10% of the company). [*Id.*] The second contract was the Consultation Contract, which the parties established in order to move forward with the process of setting up the newly formed Future International while Jinfei obtained approval for investment into Future International from the Chinese government. [*Id.* at ¶13.] Under the terms of the Consultation Contract, AMA was to arrange for the lease of a residence and a car, for which Jinfei was required to pay. [*Id.*] The Consultation Contract also obligated AMA to research locations to conduct business and to accompany Jinfei to visit customers and study the market. [*Id.*] The Consultation Contract stated that any accomplishment from these activities would be property of Future International. [*Id.*]

AMA upheld its obligations under the Consultation Contract by renting an apartment, leasing a truck for two years with insurance, and arranging numerous meetings with several large prospective U.S. customers in which both AMA and Jinfei participated under the name of Future International. [*Id.* at ¶14.] During a period from

3

April to October 2012, AMA repeatedly inquired whether the Chinese government had granted approval from Jinfei to invest in Future International and Jinfei repeatedly responded that it had not received such approval. [*Id.* at ¶16.] AMA later learned that Jinfei was fibbing. The Chinese government did in fact grant approval for Jinfei to invest in Future International way back in April, but Jinfei hid this information from AMA. [*Id.*]

Believing Jinfei's representation that it was still waiting for approval from the Chinese government, AMA waited to invest in Future International. [*Id.* ¶17.] Neither AMA nor Jinfei ever invested in Future International. [*Id.*] In October of 2012, the parties created a new contract. [*Id.* at ¶18.] At that point, Jinfei still had not disclosed that the Chinese government had approved investment of funds over six months earlier. [*Id.*] Jinfei proposed that in exchange for AMA transferring its 10% interest in Future International, AMA would receive a monthly consulting fee of $4,000 for the next year, totaling $48,000. [*Id.*] Jinfei also requested that AMA continue leasing the truck but cease leasing the apartment. [*Id.*] AMA agreed to the proposal, provided that AMA also receive payment for its past consultation services from February to October 2012. [*Id.*] Jinfei agreed to pay AMA for these months at $4,000/month for a total of $32,000. [*Id.*] The parties agreed to these terms and created the October 2012 Contract. [*Id.*]

After the third contract was created, and unbeknownst to AMA, on January 31, 2013, Jinfei and Bingzao Ge registered another company with the Indiana Secretary of

State. [*Id.* at ¶19.] This new company had nearly the identical name – Future Industrial and Trading, Inc. – and its registered agent and incorporator was listed as Ge. [*Id.*] In April 2013, Jinfei sent AMA a draft contract attempting to renegotiate the terms of the parties' agreements and AMA refused to accept Jinfei's new conditions. [*Id.* at ¶20.]

Jinfei never invested any money into Future International, nor has it paid AMA the agreed upon consulting fee. [*Id.* at ¶21.] Future Industrial has retained all of the profits generated by customer contacts that AMA created, and Future Industrial continues to conduct business under its name, which is confusingly similar to the name Future International. [*Id.*]

AMA and Future International filed this action against Jinfei, Future Industrial, and Bingzao Ge alleging breach of contract, breach of fiduciary duty, unjust enrichment, unfair competition, and trademark infringement. All claims are asserted by both Plaintiffs. The Defendants move to dismiss all causes of action asserted by Future International and Counts VI and VII of the first amended complaint asserted by both Plaintiffs for unfair competition and trademark infringement.

## Discussion

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the Plaintiffs, but I am not

5

required to accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 663.

The Defendants move to dismiss all seven causes of action asserted by Future International in the first amended complaint. Defendants argue that Future International does not have authority to bring *any* cause of action because AMA, one of Future International's two members, was not given authority to sue on behalf of Future International by the majority in interest of its members. [DE 19 at 8.] Defendants cite the following portion of Indiana Code § 23-18-8-1 in support of their position: "Except as otherwise provided in a written operating agreement, a suit on behalf of an LLC may be brought in the name of the LLC by . . . [a] member of a limited liability company . . . who is authorized to sue by the affirmative vote of a majority in interest of the members." [*Id.*] Defendants argue that the Plaintiffs cannot comply with this requirement because AMA only possesses a 10% interest in Future International. [*Id.*] What the Defendants didn't tell me in their briefing is that the relevant portion of the statute goes on to state that "[i]n determining the vote, the vote of a member who has an interest in the outcome of the suit that is adverse to the interest of the limited liability company shall be excluded." Ind. Code § 23-18-8-1. This is entirely sensible. Without such an exception, a majority owner of an LLC could act in a way that is contrary to the interests of the LLC and then inoculate itself from suit by virtue of its majority status. Here, Jinfei has an interest adverse to that of Future International because it set up a competing company through its Chairman, Bingzao Ge, into which it is allegedly

channeling profits rightfully owned by Future International. Jinfei's vote, therefore, is excluded and AMA is authorized to bring suit on behalf of Future International. It is also worth mentioning that Ind. Code § 23-18-8-2(1) provides that, "A determination that a member . . . does not have authority to sue on behalf of the limited liability company . . . may not be asserted as a defense to an action brought by the limited liability company." Ind. Code § 23-18-2(1).

With the issue cleared away over whether Future International can even bring this action, I can now move on to the Defendants more specific arguments as to Future International's claims for breach of the three contracts — the Investment Contract (Count I), the Consultation Contract (Count II), and the October 2012 Contract (Count III) — and its claim of unjust enrichment (Count V). Plaintiffs concede that Counts III and V are claims by AMA only [DE 22 at 9] and they will, therefore, be dismissed as asserted by Future International. Future International, however, has pleaded sufficient factual allegations to state a claim for breach of the Investment Contract and Consultation Contract. Defendants argue that these claims should be dismissed as asserted by Future International because Plaintiffs failed to plead the existence of a valid contract. To maintain an action for breach of contract, a party must show: (1) the existence of a contract; (2) the defendants' breach of that contract; and (3) damages. *Auto-Owners Ins. Co. v. C & J Real Estate, Inc.*, 996 N.E.2d 803, 805 (Ind. Ct. App. 2013). Defendants argue that Plaintiffs failed to allege any facts to support the existence of a contract with Future International because the only two parties to the contracts are

7

Jinfei and AMA. [DE 19 at 9.] Plaintiffs respond that Future International has standing to bring these claims as a third party beneficiary to the two contracts. [DE 22 at 9-10.] It's important to keep in mind that Civil Rule 8 requires plaintiffs to plead claims, not legal theories. *Vincent v. City of Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007). This remains so in a post *Twombly* world. *See, e.g.*, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). So despite the fact that Future International did not explicitly plead the legal theory that it was a third party beneficiary to the Investment and Consultation Contracts, the facts are sufficiently pled to infer that and to put Defendants on notice that it is.

To demonstrate that a party is a third party beneficiary, one must show: (1) clear intent by the contracting parties to benefit the third-party; (2) a duty on behalf of one of the contracting parties to benefit the third party; and (3) performance of the contract is necessary to render to the third party a direct benefit intended by the parties to the contract. *Flaherty & Collings, Inc., v. BBR-Vision I, L.P.*, 990 N.E. 2d 958, 971 (Ind. Ct. App. 2013). The first amended complaint satisfies all three elements. Count I alleges that Jinfei breached the Investment Contract when it failed to invest any money into Future International. [DE 14 at ¶26.] Count II alleges that Jinfei breached the Consultation Contract when it failed to pay AMA for securing business assets and retained business derived from the customer meetings with AMA for Future Industrial's benefit. It also alleges that Jinfei failed to deposit profits from the accomplishments of these visits in Future International's account and pay AMA the

agreed 10% share of the profits. [*Id.* ¶¶30-32.] It is clear from the allegations in the first amended complaint that Future International was a third party beneficiary to these contracts because the contracts' *purpose* was the creation, funding, and development of Future International, which would not be possible without AMA and Jinfei's performance under the contracts. As such, Future International has sufficiently pled a claim for breach of the Investment Contract and Consultation Contract under a third party beneficiary theory.

Defendants also move to dismiss the federal and state unfair competition and federal trademark infringement claims asserted by both AMA and Future International in Counts VI and VII of the first amended complaint, arguing that they failed to allege any facts to plausibly support these claims. Under the Lanham Act, both federal unfair competition claims and federal trademark infringement claims require a showing of: (1) a protectable ownership interest in a mark; and (2) that defendants' use of the mark is likely to cause confusion. *Anago Franchising, Inc. V. IMTN, Inc.,* 477 Fed. App'x 383, 385 (7th Cir. 2012). The likelihood of confusion analysis contains seven factors, none of which are dispositive: (1) similarity between the marks in appearance; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another. *Packman v. Chicago Tribune, Co.,* 267 F.3d 628, 643 (7th Cir. 2001). Under Indiana law, an unfair competition claim also is analyzed under the likelihood of confusion standard and therefore mirrors

the federal analysis. *See AHP Subsidiary Holding Co. V. Stuart Hale Co.,* 1 F.3d 611, 619 (7th Cir. 1993). Despite Defendants' assertion to the contrary, Plaintiffs' state law claim does not requires evidence of an intent to deceive and is not a subspecies of fraud and, therefore, is not subject to a heightened pleading standard. *See Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 820 (Ind. 2006). Based on the common analysis for these claims, I will analyze them together.

The first amended complaint alleges facts sufficient to satisfy the plausibility standard for these claims. Plaintiffs allege that "Future Industrial's name is confusingly similar to Future International. This confusion is compounded by the fact that many of the same individuals whom AMA introduced as being part of Future International now work at Future Industrial instead." [DE 14 at ¶51.] Plaintiffs further allege that "[t]he natural and probable consequence of adopting the Future Industrial name is to create customer confusion by falsely suggesting that Future Industrial is associated with Future International and with Mr. Zou and AMA . . . [and] Defendants are misusing a protectable mark in a way that is likely to cause confusion among customers." [*Id.* at ¶52.] These allegations are sufficient to give Defendants fair notice of the claims and the grounds upon which they rest and plausibly suggest that Plaintiffs have a right to relief. It is clear that the "protectable mark" Plaintiffs are alleging is the "Future International, LLC" name. Furthermore, it is certainly plausible that customers would confuse two companies with nearly identical names that are operating in the same industry and market, especially after forming relationships with employees of one

10

company who later went to work for the other company. For these reasons, Defendants' motion to dismiss Counts VI and VII is denied.

## CONCLUSION

For the aforementioned reasons, Counts III and V as asserted by Future International are **DISMISSED** and Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [DE 18] is **DENIED**.

**SO ORDERED.**

**ENTERED:** April 11, 2016

                                                  s/ Philip P. Simon
                                                  CHIEF JUDGE
                                                  UNITED STATES DISTRICT COURT