UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AARON, MACGREGOR & ASSOCIATES, LLC, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CAUSE NO. 3:15-CV-254-MGG<br>) |
| ZHEIJIANG JINFEI KAIDA WHEELS CO., LTD., *et al.*, | )<br>)<br>) |
| Defendants. | ) |

**OPINION AND ORDER**

On June 7, 2017, Defendants, Zhejiang Jinfei Kaida Wheels Co., Ltd. ("Jinfei"), Future Industrial & Trading, Inc., and Bingzao Ge (collectively "Defendants"), filed their Motion for Rule 11, 28 U.S.C. § 1927, and Inherent Authority Sanctions Against Plaintiffs and Their Counsel [DE 60]. On June 21, 2017, Plaintiffs, Aaron, MacGregor & Associates, LLC ("AMA") and Future International, LLC, and Third-Party Defendant Aaron Zou (collectively "Plaintiffs"), filed their brief in opposition to Defendants' motion for sanctions. Defendants' motion became ripe on June 28, 2017, when they filed their reply brief. The undersigned retains jurisdiction over this case based on the parties' consent and 28 U.S.C. § 636(c). For the reasons discussed below, the Court issues the following Opinion and Order denying without prejudice Defendants' motion for sanctions.

**I.  RELEVANT BACKGROUND**

**A.  Factual Background**

AMA is a business that buys and sells vehicle parts for resale. While visiting China, AMA's president and founder, Aaron Zou, was approached by Bingzao Ge, the chairman of

Jinfei, a Chinese company that manufactures vehicle parts. On behalf of their respective companies, Zou and Ge reached a deal to form Future International, LLC ("Future International"). Through Future International, AMA was expected to assist Jinfei with the expansion of its market in the United States beginning with the recreational vehicle market around Elkhart, Indiana. The parties entered three contracts to govern the funding, development, and management of Future International.

The parties' Investment Contract and Consultation Contract were executed on February 26, 2012. Despite agreeing that AMA would fund about 10% of the company while Jinfei would fund 90% of the company, neither company had invested in Future International as of October 2012. AMA had been waiting to invest until Jinfei received approval from the Chinese government. Jinfei, however, received the required approval in April 2012 without disclosing it to AMA. In October 2012, the parties executed a new contract that provided for AMA's 10% investment in Future International and Jinfei's payment of consulting fees to AMA back to February 2012. On January 31, 2013, Jinfei and Ge registered Future Industrial & Trading, Inc. ("FIT") with the Indiana Secretary of State without informing AMA. Jinfei never invested any funds into Future International and never paid consulting fees to AMA.

B. **Procedural Background**

On May 13, 2015, Plaintiffs filed a complaint in St. Joseph County Superior Court alleging that FIT retained profits generated by customer contacts they established through their connection to AMA and that the FIT name, under which it continues to operate, is confusingly similar to the name Future International. Plaintiffs' complaint included claims for breach of the three contracts, breach of fiduciary duty, unjust enrichment, unfair competition, and trademark infringement. Defendants removed the case to this Court alleging original jurisdiction under 28

U.S.C. § 1331 arising from Plaintiffs' Lanham Act (15 U.S.C. § 1051 *et seq.*) claim for federal trademark infringement.

Before Defendants responded to Plaintiffs' original complaint, Plaintiffs filed their amended complaint on August 12, 2015. In response, Defendants filed a motion to dismiss for failure to state a claim challenging all seven causes of action as raised by Future International and the unjust enrichment and trademark infringement claims raised by AMA as well. On April 11, 2016, this Court denied Defendant's motion to dismiss.[1] [DE 28].

The Court then issued its Rule 16(b) Preliminary Pretrial Scheduling Order on July 7, 2016, setting November 28, 2017, as the deadline for the close of all discovery on Plaintiffs' remaining claims. [DE 47]. In September 2016, FIT and Ge served their first sets of discovery requests, including requests for production, requests for admission, and special interrogatories, on Plaintiffs. On November 2, 2016, AMA served responses to FIT and Ge's interrogatories [DE 61-3] and Future International responded to Ge's request for production of documents [DE 61-4]. On November 9, 2016, Future International served responses to FIT's requests for admission [DE 61-6].

Through their interrogatories, FIT and Ge sought "foundational information" from AMA regarding the facts supporting Plaintiffs' claims. AMA objected to most of the requests as "overly burdensome insofar as [they seek] 'all facts,' [and] to the extent [they seek] the mental impressions of counsel in violation of the work product doctrine." [DE 61-3 at 3–4].

---

[1] In its opinion and order, the Court noted Plaintiffs' concession that only AMA could bring a breach of the October 2012 contract claim and an unjust enrichment claim. [DE 28 at 7]. Accordingly, the Court dismissed those two claims as to Future International only. [*Id.* at 11]. Plaintiffs' remaining claims include: Breach of the Investment Contract by Plaintiffs against Jinfei only (Count I); Breach of the Consultation Contract by Plaintiffs against Jinfei only (Count II); Breach of October 2012 Contract by AMA only against Jinfei only (Count III); Breach of Fiduciary Duty by Plaintiffs against Jinfei only (Count IV); Unjust Enrichment by AMA only against Jinfei only (Count V); Unfair Competition by Plaintiffs against all three Defendants (Count VI); and Trademark Infringement by Plaintiffs against all three Defendants (Count VII).

Nevertheless, AMA responded by repeating facts incorporated into the amended complaint while noting that "discovery is ongoing, and [reserving] the right to supplement its answer." [*Id.*].

Through his requests for production of documents, Ge similarly sought documents supporting Future International's contentions. Future International objected to each request as overly burdensome for seeking "all" documents and the mental impressions of counsel using the same language AMA used when objecting to FIT and Ge's interrogatories. [DE 61-4 at 3–4]. Future International then responded by referring to "Plaintiffs Bates 295–298," which are the incorporation documents for FIT dated October 20, 2014, on file with the Indiana Secretary of State. [*Id.*; *see also* DE 61-5].

Through its requests for admission, FIT asked for admissions related to facts it deemed foundational to Plaintiffs' claims, including whether (1) Future International sold any goods or products, provided any services, or advertised goods or services using its mark; (2) Future International has any evidence of FIT using Future International's mark or a confusingly similar mark or any evidence of confusion; (3) Jinfei owned 100% of Future International; and (4) Future International ever used its own mark, obtained a tax ID, engaged in business operations, or opened a business bank account. Future International admitted only that it "has not had a business bank account." [DE 61-6 at 5]. Future International denied the rest of FIT's requests with objections to most alleging that FIT was seeking "the mental impressions of counsel in violation of the work product doctrine." [*Id.* at 3–5]. To some requests, Future International also noted that it was "not able to respond until discovery is completed." [*Id.*].

Finding Plaintiffs' responses deficient, Defendants' counsel wrote a letter to Plaintiffs' counsel on March 8, 2017, seeking supplementation. [DE 61-7]. In a written response dated April 28, 2017, Plaintiffs highlighted ongoing discovery shortcomings by Defendants and

4

indicated that their supplementation had been hindered by Defendants' withholding of relevant discovery responses. [DE 61-8 at 3]. Specifically, Plaintiffs' counsel stated:

> Plaintiffs will supplement their responses after Defendants confirm the scope of their supplementation and produce the entire supplementation. Plaintiffs will require thirty (30) days to review the information after Defendants submit their final supplementation, and Plaintiffs will then supplement accordingly.

[*Id.*]. On May 1, 2017, Defendants' counsel sent another letter to Plaintiffs' counsel reiterating concerns over Plaintiffs' discovery responses, alerting Plaintiffs to the possibility of a Rule 37 motion to compel, and arguing that Plaintiffs' insufficient discovery responses proved a violation of the Rule 11(b) requirement of a reasonable investigation of claims before they are filed. [DE 61-9].

On May 11, 2017, Defendants' counsel then served a copy of the instant motion for sanctions and its accompanying memorandum in support on Plaintiffs' counsel. [DE 61-10, 61-11]. Plaintiffs did not withdraw their claims or otherwise correct them. Therefore, Defendants filed the instant motion on June 7, 2017, having waiting more than the 21 days required by Fed. R. Civ. P. 11(c)(2).[2] Through their motion, Defendants ask the Court to use its authority under Rule 11(c), 28 U.S.C. § 1927, and its own inherent power to sanction Plaintiffs by (1) dismissing all of the claims in their amended complaint with prejudice and (2) ordering Plaintiffs and their counsel to pay Defendants' reasonable attorney fees and costs incurred in litigation of this action after removal. In their defense, Plaintiffs argue that (1) Defendants are raising discovery disputes that do not rise to the level of Rule 11 litigation abuses; (2) the Court's order denying

---

[2] Fed. R. Civ. P. 11(c)(2) states:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

5

Defendants' motion to dismiss already establishes the sufficiency of the amended complaint; and (3) the amended complaint and initial disclosures provide competent evidentiary support for Plaintiffs' claims for which Rule 11(b) requires nothing more.

## II. ANALYSIS

### A. Rule 11 Sanctions

Fed. R. Civ. P. 11(b) sets the standard for integrity in each attorney's or unrepresented party's representations to the court. Specifically, Rule 11(b)(3) requires attorneys and unrepresented parties to certify

> to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

As a result, "[r]epresentations in a filing in a federal district court that are not grounded in an 'inquiry reasonable under the circumstances' or that are unlikely to 'have evidentiary support after a reasonable opportunity for further investigation or discovery violate Rules 11(b) and 11(b)(3)." *City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013)). Indeed, "an attorney violates Rule 11 in maintaining a claim that is unwarranted by existing law or has no reasonable basis in fact." *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) As a result, Rule 11 requires a plaintiff to "engage in a reasonable, meaningful investigation . . . prior to filing its complaint." *Smart Options, LLC v. Jump Rope, Inc.*, No. 12 C 2498, 2013 WL 500861, at *4 (N.D. Ill. Feb. 11, 2013). "[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violate[s] [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1); *see, e.g.*, *United Stars Indus., Inc. v. Plastech Engineered Prod., Inc.*, 525 F.3d 605, 610 (7th Cir. 2008) (sanctioning a law

firm that "advanced a position that never had any evidentiary support, and thus necessarily could not have been based on a reasonable investigation preceding the counterclaim.");

By filing a Rule 11 motion for sanctions based on non-frivolous allegations, a party successfully makes a *prima facie* showing of sanctionable conduct. *Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827, 840 (N.D. Ind. 1995) (citing *Shrock v. Altru Nurses Registry*, 810 F.2d 658 (7th Cir. 1987). Once the *prima facie* showing is made, "the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim." *Digeo, Inc. v. Audible, Inc.*, 505 F3d 1362, 1368 (Fed. Cir. 2007). Thus, the burden of reasonable investigations falls on the proponent of a proposition, not the opponent. *Vandeventer*, 893 F. Supp. at 840. Here, the burden shifts to Plaintiffs to show that they reasonably investigated their claims against Defendants before filing their complaint now that Defendants have filed the instant motion for sanctions.

Assessing the reasonableness of a party's pre-filing inquiry requires the court to ascertain whether "the party or his counsel [objectively] should have known that his position is groundless." *Cuna Mut. Ins. Soc'y v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citations omitted). Plaintiffs are not required to have sufficient information to prevail on a motion for summary judgment, a motion to dismiss for failure to state a claim, or at trial to comply with Rule 11. *Vista Mfg., Inc. v. Trac-4, Inc.*, 131 F.R.D. 134, 138 (N.D. Ind. 1990) (citation omitted). A plaintiff's pre-filing inquiry must only be reasonable under the circumstances, which vary from case to case. *Id.* Therefore, the court must consider all the circumstances of a case before awarding Rule 11 sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990). Moreover, Rule 11 sanctions are a rarity. District judges must "reflect seriously, and consider fully, before imposing (or denying) sanctions."

7

*II Ltd. v. English*, 217 Fed. App'x 527, 529 (7th Cir. 2007) (citing *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 936 (7th Cir. 1989)).

### 1. Effect of This Court's Denial of Defendants' Motion to Dismiss on Sanctions Analysis

Before conducting any analysis of the reasonableness of Plaintiffs' pre-complaint inquiry, the Court must consider the effect of this Court's order denying Defendants' motion to dismiss Plaintiffs' claims. In its order, this Court held that (1) Future International had authority to assert claims against Defendants, (2) Future International pleaded sufficient factual allegations to state a claim for breach of the Investment Contract and Consultation Contract under a third party beneficiary theory, and (3) AMA and Future International pleaded facts sufficient to satisfy the relevant plausibility standard[3] for their unfair competition and trademark infringement claims, both of which turn on the likelihood of customer confusion. [DE 28]. Yet in essence, Defendants' instant motion for sanctions contends that Plaintiffs' amended complaint is frivolous and therefore subject to dismissal with prejudice.

Neither party cites authority to suggest that Rule 11 sanctions are avoided in situations where the court holds that a plaintiff's pleadings are sufficient under the Rule 12(b)(6) plausibility standard set forth in *Iqbal* and *Twombly*. However, the Court's order demonstrates that Plaintiffs' amended complaint pleaded facts in support of their claims. And appropriate deference should be given to a district court's decision on a motion to dismiss. *Cooney v. Casady*, 735 F.3d 514, 522 (7th Cir. 2013). Moreover, a plaintiff "should not be faulted for proceeding with her case once she was given the chance to do so with the denial of the motion to dismiss." *Id.*

---

[3] *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *accord Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

8

Deference to this Court denial of Defendants' motion to dismiss could result in an inference that Plaintiffs' factual allegations in their amended complaint show sufficient pre-complaint investigation into those facts. Any such inference, however, would not be determinative in a Rule 11 sanctions analysis, which requires consideration of the totality of the circumstances when evaluating whether a plaintiff engaged in reasonable inquiry into the facts before filing claims. *See Cooter & Gell*, 496 U.S. at 401; *Smart Options, LLC*, 2013 WL 500861, at *3. Moreover, the *Iqbal* and *Twombly* plausibility standard assumes the veracity of a plaintiff's factual allegations in a complaint without requiring any verification that Plaintiff can support those same allegations.

Therefore, this Court's order denying Defendants' motion to dismiss is not dispositive to whether Plaintiffs' pre-complaint investigation was reasonable. Accordingly, the Court now turns to the parties' arguments regarding the reasonableness of Plaintiff's pre-complaint inquiry.

### 2. Reasonableness of Plaintiffs' Pre-Complaint Inquiry into Facts in Support of Their Legal Claims

In briefing Defendants' motion for sanctions, neither party has met their burden convincingly. Both Plaintiffs and Defendants ask the Court to rule in their favor based on dueling inferences supported by limited underlying evidence and conclusory statements about Plaintiffs' pre-complaint investigation.

#### a. Defendants' *Prima Facie* Showing of Sanctionable Conduct

Defendants' only burden here is to make a *prima facie* showing of Rule 11 sanctionable conduct by filing a motion for sanctions based on non-frivolous allegations. *See Vandeventer*, 893 F. Supp. at 840. Defendants allege sanctionable misconduct against Plaintiffs citing only to Plaintiffs' discovery responses. Defendants suggest that their discovery requests sought "foundational information" from Plaintiffs that they should have had in hand before filing their

9

complaint. As such, Defendants view Plaintiffs' objections to the discovery requests and their professed inability to respond until after receiving discovery responses from Defendants as an admission that Plaintiffs did not undertake a reasonable pre-complaint investigation in violation of Rule 11(b). With nothing more, however, Defendants' allegations seem frivolous.

Fed. R. Civ. P. 8(a)(2) only requires that pleadings include "a short and plain statement of the claim showing that the pleader is entitled to relief." Litigation necessarily involves discovery, as governed by Rule 26 through 37, largely because plaintiffs cannot be expected to have access to or an ability to find all the relevant facts before filing a complaint. Litigants commonly supplement their discovery responses after reviewing discovery received from an opposing party. Therefore, Defendants' conclusion that Plaintiffs' pre-complaint investigation was unreasonable based solely on Plaintiffs' common discovery response is an unjustified logical leap. Such a leap also implies that Defendants did not consider the breadth of facts Plaintiffs did actually incorporate into their amended complaint.

In a footnote, Defendants also assert with confidence, but no factual or legal support, that their discovery responses to Plaintiffs have established that the marks at issue in this case have not been used such that Plaintiffs' trademark infringement and unfair competition claims are now "patently frivolous." [DE 63 at 9 n.4]. Defendants then seem to want the Court to extrapolate from their unsupported conclusion on the merits of this case that Plaintiffs' refusal to dismiss those claims is evidence of Rule 11 sanctionable conduct. Similarly, Defendants argue that Plaintiffs' production of FIT's incorporation documents does not establish use of the mark in commerce making Plaintiffs' refusal to dismiss the infringement and unfair competition claims sanctionable conduct showing lack of reasonable pre-complaint inquiry.

10

Once again, this is a quite a stretch to make at this early stage of litigation before discovery has closed, before any motions for summary judgment have been filed or considered, and before trial. Even assuming for the sake of argument that Defendants' confidence is justified, Defendants have more persuasively suggested that Plaintiffs' claims may lack substantive merit than they have shown that Plaintiffs' pre-complaint inquiry into their claims was unreasonable under Rule 11 standards. As a result, the Court finds Defendants' allegations of Rule 11 sanctionable misconduct to be unreasonable, and therefore, frivolous making them insufficient to establish a *prima facie* case of sanctionable conduct.

### b. Plaintiffs' Evidence of Reasonable Pre-Complaint Inquiry

Even if the Court could find that Defendants' met their burden to make a *prima facie* case of sanctionable conduct in their instant motion, Plaintiffs have not satisfied their burden to show that they made a reasonable pre-complaint inquiry into its claim. *See Digeo, Inc.*, 505 F.3d at 1368. Defendants correctly note that Plaintiffs responded to Defendants' instant motion with no facts about the process they used to investigate their claims before filing the complaint. Instead, Plaintiffs ask the Court to infer a reasonable inquiry from the detailed facts incorporated into their amended complaint, the three contracts attached to their amended complaint, and the content of their Rule 26(a)(1) initial disclosures, which disclosed the identity of ten witnesses on specified subject matters, quantified damages for each claim, and delivered relevant business records, emails, transaction documents and correspondence.

Yet the key to the Rule 11(b) analysis here is whether Plaintiffs engaged in a reasonable pre-filing inquiry. *See City of Livonia Emps.' Ret. Sys. & Local 295/Local 851*, 711 F.3d at 762. Therefore, any investigation after Plaintiffs filed their complaint is irrelevant to the analysis.

11

To infer reasonable inquiry as Plaintiffs ask would be just as intellectually dishonest as it would have been for the Court to infer the lack of reasonable inquiry Defendants have argued exists. Pleadings on their own say nothing about a party's pre-filing investigation. Initial disclosures say even less because nothing guarantees that the initial disclosures only include evidence gathered before the filing of the complaint. Indeed, nothing prevents parties from continuing to investigate their claims after filing their complaint but before the formal start of discovery when initial disclosures are typically served. Moreover, Plaintiffs did not serve their initial disclosures on Defendants in this case until August 15, 2016, more than two years after the action was initiated in state court and more than one year after Plaintiffs filed their amended complaint in this Court. With nothing in the record describing Plaintiffs' pre-filing investigation, the Court simply cannot infer anything from the pleadings or initial disclosures.

Therefore, neither Defendants nor Plaintiffs have met their burdens. The record includes no facts related to Plaintiffs' pre-complaint investigation into their claims. The parties' dueling inferences both fail to present even a logical bridge to any conclusion about Plaintiffs' reasonable inquiry or lack thereof.

### 3. Apparent Ongoing Discovery Matters

The parties' briefs, however, do suggest that discovery disputes may indeed exist. Without more thorough arguments, the Court refuses to issue any order regarding the disputes. Nevertheless, the Court reminds the parties of their obligations under the Federal Rules of Civil Procedure. The Rules require full, complete, and timely responses to discovery requests. *See* Fed. R. Civ. P. 33(b), 34(2), 36(3)–(6). Nothing in the Rules allows a party to withhold responsive discovery until the time of its choice. Withholding responsive information negates the open nature of litigation envisioned by the Federal Rules of Civil Procedure, slows the flow

of litigation, and fosters more motion practice, which increases costs to the parties themselves and to this Court. In other words, withholding responsive information violates the call of Fed. R. Civ. P. 1 to construe, administer, and employ the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."

Yet not all responsive information surfaces at the exact time a discovery request is served. Indeed, a party cannot produce information they do not possess. Therefore, the Rules provide for supplementation of discovery responses as they arise in the normal course of discovery. *See* Fed. R. Civ. P. 26(e). In fact, this Court has explicitly ordered "[s]upplementation under Rule 26(e) due every **six weeks** until trial." [DE 47 at 2].

With these guiding principles in mind, the parties are advised that withholding responsive information will not be tolerated and timely supplementation must continue throughout litigation. To ensure that both parties' discovery responses are as complete as possible at this time, the Court **ORDERS** all parties to serve an additional round of supplemental discovery responses by **November 6, 2017**. The producing party should also provide written notice to the request party by the same date should no additional responsive information be possessed. Supplementation under Rule 26(e) shall then continue every six weeks until trial.

### B. Other Grounds for Sanctions

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Section 1927 applies to cases marked by a litigant's bad faith, which is shown when 'counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders.'" *Prenda Law, Inc. v. Godfread*,

13

No. 13-CV-4341, 2014 WL 2699817, at *2 (N.D. Ill. June 12, 2014) (quoting *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 799 (7th Cir. 2013) (citations and internal quotations omitted)). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Riddle & Assocs. P.C. v. Kelly,* 414 F.3d 832, 835 (7th Cir. 2005) (quoting *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989)). Under Section 1927's objective standard, reckless indifference to the law will support sanctions. *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). Courts may also invoke their inherent authority and sanction parties that "willfully abuse[] the judicial process or otherwise conduct[] litigation in bad faith." *Prenda Law*, 2014 WL 2699817, at *2 (quoting *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012)).

For the same reasons discussed above, Defendants have not established that Plaintiffs were even recklessly indifferent to the law in their pre-complaint investigation of their claims. The record includes nothing to persuade the Court that Plaintiffs have willfully abused the judicial process or have exhibited any bad faith in the litigation of this case. Therefore, neither Section 1927 nor the Court's inherent authority provide the grounds to sanction Plaintiffs at this time on this matter.

## III. CONCLUSION

As discussed above, both Defendants and Plaintiffs have failed to meet their burden under Fed. R. Civ. P. 11(b) for sanctions related to Plaintiffs' pre-complaint investigation into its complaints. Moreover, Defendants have not established the objective bad faith necessary to justify sanctions under 28 U.S.C. § 1927. Furthermore, Defendants have not established any willful abuse of the judicial process or bad faith litigation by Plaintiffs to warrant sanctions by

14

invocation of this Court's inherent authority.  Therefore, the Court **DENIES** Defendants' motion.  [DE 60].  To minimize the effects of the parties' apparent discovery disputes, the Court also **ORDERS** all parties to serve an additional round of supplemental discovery responses by **November 6, 2017**.  The producing party should also provide written notice to the requesting party by the same date should no additional responsive information be possessed.  Supplementation under Fed. R. Civ. P. 26(e) shall then continue every six weeks until trial.

**SO ORDERED.**

Dated this 30th day of October 2017.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge