# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| AARON MACGREGOR & ASSOCIATES, LLC and FUTURE INTERNATIONAL, LLC,<br><br>       Plaintiffs,<br><br>   v.<br><br>ZHEJIANG JINFEI KAIDA WHEELS CO., LTD., FUTURE INDUSTRIAL & TRADING, INC., and GE BINGZAO,<br><br>      Defendants. | CASE NO.: 3:15-cv-00254-MGG |
| ZHEJIANG JINFEI KAIDA WHEELS CO., LTD.,<br><br>      Counter-claimant/<br>      Third-Party Plaintiff,<br><br>   v.<br><br>AARON, MACGREGOR & ASSOCIATES, LLC,<br><br>      Counter-defendant,<br><br>   and<br><br>AARON ZOU,<br><br>      Third-Party Defendant. | |

## OPINION AND ORDER

This case stems from a business relationship gone bad in the world of vehicle parts sales. Aaron Zou ("Zou"), president and founder of Aaron, MacGregor & Associates, LLC ("AMA"), met the Chairman of Zhejiang Jinfei Kaida Wheels Co., Ltd. ("Jinfei"), Bingzao Ge ("Ge"), on a trip to China in 2011 for a business conference. Zou and Ge began discussions that continued after Zou returned to Indiana about forming a new company in Elkhart through which AMA could assist Jinfei as it expanded into the recreational vehicle market in Elkhart. The two companies executed agreements to govern their new business relationship. Jinfei sought approval from the Chinese government to invest in the new American company. Zou hosted Jinfei employees in Indiana and facilitated meetings between Jinfei and prospective American clients.

Ultimately, things went south and the AMA-Jinfei relationship, as embodied in the creation of Future International, LLC ("Future International"), deteriorated. Jinfei decided to launch a separate business entity for its work, Future Industrial & Trading, Inc. ("FIT"). AMA and Zou claim Jinfei employed subterfuge to circumvent the parties' contractual relationship related to Future International while Defendants allege Zou misrepresented what he and AMA could do on Jinfei's behalf in Indiana before the contracts were executed. Through competing claims in this lawsuit, the parties allege damages arising from the demise of the business relationship that started with Zou and Ge's introduction at that 2011 business conference in China.

Now the Court has been presented with two motions for partial summary judgment, filed within a day of each other at the end of December 2017, that seek to eliminate all but the primary breach of contract claims between the parties. In their

motion filed on December 28, 2017, Counterdefendant AMA and Third-Party Defendant Zou ask the Court to grant summary judgment as to all counterclaims by Jinfei. [DE 69]. Specifically, AMA and Zou challenge Jinfei's counterclaims of breach of fiduciary duty against AMA only and unjust enrichment, conversion, fraud against AMA and Zou. Through their motion filed on December 29, 2017, Defendants Jinfei, FIT, and Ge, seek summary judgment on Plaintiffs AMA's and Future International's claims of unjust enrichment; unfair competition under state and federal law; federal trademark infringement and false designation of origin; as well as all claims against Ge. [DE 73].

These are not clean motions for summary judgment, however. This case has been contentious throughout as evidenced by Defendants' previous motion for sanctions under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent authority to manage its docket ("the Original Motion for Sanctions"), alleging that Plaintiffs had not conducted reasonable pre-complaint inquiry into their claims. The Court denied Plaintiffs' Original Motion for Sanctions without prejudice on October 30, 2017. [DE 64]. However, the parties' frustrations with each other did not subside as became clear through two motions filed within two days of the motions for summary judgment, both of which arguably seek to punish the nonmovants for their approach to this litigation.

First, Defendants renewed their motion for sanctions ("the Renewed Motion for Sanctions"), seeking once again dismissal of all Plaintiffs' claims with prejudice citing additional evidence in support of allegation that Plaintiffs did not conduct reasonable pre-complaint inquiry into their claims. [DE 72]. Second, Plaintiffs filed a motion to

compel seeking (1) complete discovery responses from Defendants related to requests made in 2016; (2) additional discovery related to the key issue of "use in commerce" on Plaintiffs' federal trademark infringement and false designation of original claim to support their opposition to Defendants' motion for summary judgment; and (3) discovery of Defendants' computers not ever requested before. [DE 75].

Lastly, Defendants have filed multiple objections to evidence Plaintiffs submitted in support of the Renewed Motion for Sanctions and the two motions for summary judgment. [DE 85, 90, 92, 98]. The Court heard oral argument on all these outstanding matters on April 26, 2018. The undersigned now issues the following opinion and order with jurisdiction conferred by the consent of the parties and 28 U.S.C. § 636(c).

## I.  RELEVANT BACKGROUND

### A.  Factual Background

As part of their joint efforts to sell vehicle parts in Indiana, AMA and Jinfei agreed to form Future International. In December 2011, Zou, on behalf of AMA, registered Future International as an LLC with the State of Indiana. Three contracts were executed between AMA and Jinfei to govern the funding, development, and management of Future International.

The first two contracts[1], executed on February 26, 2012, ("the February 2012 Contracts") provided that AMA and Jinfei would both invest money to form Future

---

[1] The parties label these contracts, written in Chinese, differently. [*See* DE 33 at 5]. AMA and Zou call them the Investment Contract [DE 69-3] and the Consultation Contract [DE 69-4], while Jinfei refers to them as a Letter of Intent and an Agreement [DE 91 at 9, ¶ 3]. The Court need not resolve the parties' dispute over the translation of these document titles at this time.

International, an Indiana business entity that would purchase automotive parts from Jinfei for resale to American customers. The contracts more specifically provided that Jinfei would invest 90% of the funds in the amount of $270,000, while AMA would invest 10% of the funds in the amount of $30,000. The contracts also divided profits 90% to Jinfei and 10% to AMA.

In the contracts, AMA agreed to use his legal, tax, and business expertise in the American RV and automotive industries to help Jinfei's Chinese representatives build a warehouse for its products and conduct and solicit business in the United States. AMA was expected to lease a vehicle and an apartment as well for the Jinfei's representatives to use while visiting from China. In return, Jinfei agreed to fund the leases and to participate jointly with AMA in meetings with prospective American customers. The parties agreed that any results of their joint efforts would become the property of Future International.

Both AMA and Jinfei took steps to develop Future International. AMA facilitated the leases of the vehicle and apartment. Jinfei provided AMA with $30,000 for that purpose. Jinfei expended time and resources seeking Chinese approval of their investment in Future International. Yet by October 2012, neither company had invested in Future International. AMA chose not to invest before Jinfei did and Jinfei was waiting to invest until it received approval from the Chinese government. By October 2012, Jinfei had repeatedly told AMA that the approval had not yet been granted.

Therefore, AMA and Jinfei executed a new contract in October 2012 changing the parameters of their business relationship. The October 2012 Contract provided that

AMA would transfer its 10% ownership in Future International to Jinfei while Jinfei would pay a consulting fee to AMA to compensate for its work for Future International back to February 2012. Jinfei also agreed to pay AMA a monthly consulting fee through November 2013. At the same time and at Jinfei's request, AMA canceled the apartment lease but maintained the vehicle lease for Jinfei. Yet AMA never transferred its ownership in Future International to Jinfei and Jinfei allegedly never paid AMA the consulting fees.

However, on January 31, 2013, Jinfei and Ge registered FIT as a corporation without AMA's knowledge. Through the complaint in this action filed in 2015, AMA and Future International allege that FIT is still operating and retaining all the profits generated as the result of AMA's work with Jinfei for Future International. The operative amended complaint includes claims for breach of the three contracts, breach of fiduciary duty, unjust enrichment, unfair competition, and trademark infringement. Jurisdiction for this action arises from 28 U.S.C. § 1331 and AMA and Future International's Lanham Act (15 U.S.C. § 1051 *et seq.*) claim for federal trademark infringement.

## II.  ANALYSIS

### A.  Defendants' Evidentiary Objections

As a preliminary matter, Defendants filed objections to assorted evidence Plaintiffs submitted in support of the instant motions. Despite Defendants' multiple objections, the Court only needed to rely upon one piece of evidence that Defendants' challenged—Zou's Affidavit about how he spent the $30,000 Jinfei wired to AMA and

whether he or AMA received any benefit from the $30,000—to resolve the relevant motions. [*See* DE 92 at 3 (citing DE 69-2 at ¶¶ 32–33)]. As to Zou's Affidavit, Defendants argue that Zou is making improper legal conclusions about the definition of the term "benefit" in connection with various claims in this action. Additionally, Defendants contend that Zou's accompanying chart of expenditures lacks foundation because the chart is not the best evidence of the alleged use of monies and Jinfei disputes whether Zou actually spent the money as he claims.

Defendants' grounds for objection are not enough to justify exclusion of these statements in Zou's Affidavit in consideration of AMA and Zou's motion for partial summary judgment. First, Defendants cite only to Fed. R. Evid. 701/702 in support of their objection of improper legal opinion without directing the Court to any further interpretation to show that the term "benefit" in the relevant claims requires a legal conclusion. Second, Mr. Zou is allowed to testify by affidavit as to his personal knowledge about expenditures and the concept of benefit. Third, AMA and Zou did present documentation related to the apartment and vehicle leases. And lastly, any dispute as to Zou's actual expenditures was not supported with any evidence from Jinfei. Thus, the Court is not persuaded that Zou's Affidavit statements should be excluded from consideration.

The remaining objections have no effect on the outcome of the motions below and need not be considered. Accordingly, the Court **OVERRULES** all of Defendants' evidentiary objections. [DE 85, 90, 92, 98].

**B.      Defendants Jinfei, FIT, and Ge's Renewed Motion for Sanctions**

The Court can also dispense quickly with Defendants' Renewed Motion for Sanctions. Defendants' instant motion, filed on December 29, 2017 [DE 72], requests the same relief that this Court denied without prejudice in an order dated October 30, 2017 ("the October 2017 Order") [DE 64]. The Court need not repeat the substance of that order in full. Yet as relevant here, parties filing a motion for Rule 11 sanctions must make a *prima facie* showing of sanctionable conduct based on non-frivolous allegations. *Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827, 840 (N.D. Ind. 1995) (citing *Shrock v. Altru Nurses Registry*, 810 F.2d 658 (7th Cir. 1987). Once the *prima facie* showing is made, "the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007). In applying this two-step analysis, the Court found that neither Defendants nor Plaintiffs met their respective burdens. [DE 64 at 12]. First, the Court found "Defendants' allegations of Rule 11 sanctionable misconduct to be unreasonable, and therefore, frivolous making them insufficient to establish a *prima facie* case of sanctionable conduct." [*Id.* at 11]. The Court then found "nothing in the record describing Plaintiffs' pre-filing investigation" of the claims in their complaint and consequently stated that Plaintiffs had not met their burden to show reasonable pre-complaint inquiry into their claims. [*Id.* at 12].

Here in their Renewed Motion for Sanctions, Defendants once again ask the Court to dismiss with prejudice any and all claims in the First Amended Complaint and to award them monetary sanctions in the form of reasonable attorney fees incurred in

8

this action since removal to this Court. [DE 72 at 2]. In support, Defendants merely attach, without explanation, excerpts from the deposition testimony of Mr. Zou, both in his individual capacity and as a Rule 30(b)(6) deponent for AMA. Defendants then baldly assert that "Mr. Zou's deposition testimony supports, and confirms, the grounds under which Defendant brought the original motion. (*See* Dkt. 60, 61, and 63)." [*Id.*]. In so doing, Defendants successfully incorporate the briefing on their original motion for sanctions, but fail to specify exactly what parts of the excerpts of Mr. Zou's deposition testimony they are relying upon or which arguments from the original briefing are confirmed by the same deposition testimony.

As a result, Defendants have left Plaintiffs and this Court unclear as to how the additional evidence of Mr. Zou's deposition testimony should change the outcome of the Court's Rule 11 sanctions analysis in its October 2017 Order. Defendants seem to expect both Plaintiffs and this Court to study the deposition excerpts and their previous briefing and infer the effect of the additional evidence on their arguments. This is not the Court's job. Indeed, "[j]udges are not like pigs, hunting for truffles buried in [the record]." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991); *see also Friend v. Valley View Cmty. Unit Sch. Dist. 365U,* 789 F.3d 707, 711 (7th Cir. 2015) ("[The court is] not required to scour through . . . deposition transcript[s] in order to verify an assortment of facts, each of which could be located anywhere within the . . . depositions cited."); *Corley v. Rosewood Care Ctr., Inc. of Peoria,* 388 F.3d 990, 1001 (7th Cir. 2004) ("[The court] will not root through the hundreds of documents and thousands of pages that make up the record here to make his case for him."). As such, the Court sees nothing new in the

record that would change its previous conclusion that Defendants have not met their burden to make a *prima facie* showing of sanctionable conduct based on non-frivolous allegations, thus still precluding sanctions.

The Court acknowledges that Defendants present arguments in their reply brief related to the Renewed Motion that rely upon Mr. Zou's deposition testimony. However, Defendants' arguments in their reply brief still fail to show a *prima facie* case of sanctionable conduct based upon non-frivolous allegations. Defendants rely on Mr. Zou's deposition testimony as uncontroverted evidence that contradicts Plaintiffs' claim in its trademark infringement and unfair competition claims that the Future International and FIT marks were used in commerce. Again, Defendants' arguments comment on the substantive merit of Plaintiffs' claims in light of evidence acquired during discovery rather than showing unreasonable pre-complaint inquiry into the claims. [*See* DE 64 at 11].

In the end, the mere addition of Mr. Zou's deposition testimony to the record did not—and could not—help Defendants satisfy their burden under Rule 11 standards even if they had not waived such arguments by failing to develop any arguments in their Renewed Motion. Therefore, the Court **DENIES** Defendants' Renewed Motion for Sanctions. [DE 72].

Lastly, Defendants filed their Renewed Motion for Sanctions with a complete understanding of the Court's Rule 11(b)(2) analysis of Plaintiffs' pre-complaint inquiry as presented in the October 2017 Order. Therefore, Defendants' Renewed Motion appears frivolous as they had insight from which to anticipate accurately the Court's

approach to the "new" evidence included with the Renewed Motion. Moreover, Defendants' counsel would have—or at least should have—understood the effect of failing to specify evidence and argument in their Renewed Motion. In light of these two realities, Defendants and their counsel have also caused the Court to question whether they violated Fed. R. Civ. P. 11(a) by filing the Renewed Motion. Accordingly, the Court invokes Fed. R. Civ. P. 11(c)(3) and **ORDERS** Defendants' counsel to show cause by **June 29, 2018**, why the Court should not find that the renewed motion for sanctions was presented for an improper purpose as prohibited under Fed. R. Civ. P. 11(b)(1) and should not impose monetary sanctions accordingly.

### C.    Plaintiffs' AMA and Future International's Motion to Compel

Plaintiffs' Motion to Compel Discovery and Enforce the Court's October 30, 2017 Order filed on December 30, 2017, is not persuasive either even after review in light of the standards of both Fed. R. Civ. P. 37 related to discovery and Fed. R. Civ. P. 56(d) related to summary judgment.

#### 1.    Relevant Background

The instant discovery dispute grew largely out of Request 1-1 in Plaintiffs' First Request for Production of Documents served on Jinfei on July 13, 2016. Request 1-1 sought "all Communications and Documents exchanged between [Defendants] and any third party relating to or discussing the sale or potential sale of any automobile parts in Indiana." [DE 75-1 at 4, Document Request 1-1]. Premised on AMA's belief that Jinfei had no presence in Indiana before it began working with AMA, Request 1-1 was

designed to elicit evidence from Jinfei showing that AMA was entitled to a portion of the profits resulting from Jinfei's and FIT's business in Indiana.

On October 30, 2016, Jinfei provided responses to Plaintiffs' document requests, but Plaintiffs found them deficient. Based on AMA's belief that more information existed as to third party companies, Plaintiffs served non-party requests for production of documents on three companies doing business with Jinfei and with whom AMA had a previous relationship. Despite Jinfei's objections to all three non-party subpoenas, two of the companies—Tredit Tire & Wheel Co. and Lionshead Specialty Tire & Wheel, LLC—produced a large number of documents related to Request 1-1 in December 2016 that Plaintiffs thought Jinfei should have produced themselves.

With Tredit's and Lionshead's documents in hand, Plaintiffs began a series of communications with Jinfei seeking supplemental responses to Request 1-1. On January 23, 2017, Plaintiffs first requested the supplemental responses. On February 3, 2017, Jinfei requested that Plaintiffs produce the Tredit and Lionshead documents first. Jinfei also argued that the non-party information Plaintiffs sought was not all relevant because some of the customer meetings occurred before the parties signed the February 2012 contracts. Jinfei had especially objected to producing documents evidencing their relationship with the third non-party Plaintiffs had subpoenaed, Americana Development, Inc., because Jinfei and Americana had a business relationship before Jinfei and AMA began working together such that AMA could not have introduced Jinfei to Americana. Plaintiffs responded by letter on March 30, 2017, explaining why

they believed all the requested non-party information to be relevant under the standards of Fed. R. Civ. P. 26.

On April 6, 2017, before Jinfei had produced any of the supplemental responses, Americana produced hundreds of pages of documents regarding its business relationship with Jinfei back to 2012. On April 21, 2017, Jinfei served its supplemental responses on Plaintiffs including documents dating back to 2011 related to its business relationships with Tredit and Lionshead, but nothing reflective of the relationship with Americana. On the same day, Plaintiffs provided Defendants with all documents they had received from Tredit, Lionshead, and Americana. Plaintiffs sent three additional letters to Jinfei about the outstanding responses to Request 1-1 on April 21, April 28, and May 2, 2017.

With the dispute over Request 1-1 unresolved, Defendants filed their Original Motion for Sanctions. Plaintiffs' response brief included references to their ongoing dissatisfaction with Jinfei's responses to Request 1-1. The Court resolved the Original Motion by order dated October 30, 2017. In addition to addressing the sanctions issue raised in Defendants' Original Motion, the Court ordered all parties to supplement all existing discovery responses by November 6, 2017. Before the Court issued its order, however, the parties had scheduled the depositions of AMA and Zou for November 16, 2017, and of Jinfei and FIT, on November 17, 2017.

None of the parties filed a supplemental response by the November 6th deadline. Yet on the night of November 15th, less than a day before the scheduled depositions were set to begin, Jinfei served some supplemental responses, including a 4-page

spreadsheet of sales figures relevant to Request 1-1, on Plaintiffs. Jinfei located the documents for the first time after November 6th while preparing for its deposition. Jinfei did not, however, produce any Americana documents.

The depositions proceeded as scheduled. As relevant here, Zou testified that Jinfei had arranged the meeting he attended with Americana unlike many, or possibly all, of the other customer meetings where Zou and AMA had initiated meetings with Jinfei. Additionally, Plaintiffs' counsel did not review the spreadsheet Jinfei had produced on November 15th before deposing its Rule 30(b)(6) witness, its Deputy General Manager, Hongxing (Kevin) Ren, on November 17th. As a result, Plaintiffs' counsel did not ask Ren about the newly produced information. Jinfei then supplemented its discovery responses again on November 21, 2017, with Jinfei's application to the Chinese government for permission to invest in FIT, a document that had not been located due to some confusion about a cover sheet that was resolved at Ren's deposition.

The deadline for the close of all discovery passed on November 28, 2017. On December 6, 2017, Plaintiffs sent another letter to Defendants outlining their continuing dissatisfaction with Defendants' conduct during discovery. Specifically, Plaintiffs noted Jinfei's failure to produce any documents related to Jinfei's relationship with Americana, Defendants failure to comply with the Court's order for supplemental discovery by November 6th, Jinfei's late production of its 2012 application to invest in FIT, and Ren's allegedly evasive answers at his deposition making him an absent witness. Plaintiffs concluded proposing that the discovery deadline be extended to

allow for further production of documents, Ren's deposition be reconvened, and Jinfei produce mirror images of Defendants' computers. On December 20, 2017, Defendants wrote a letter to Plaintiffs rejecting their requests.

On December 29, 2017, Defendants filed their motion for partial summary judgment on, among other things, Plaintiffs' federal trademark infringement claim. Plaintiffs filed their instant motion to compel on December 30, 2017, asking the Court to issue an order compelling Defendants "(1) to produce a 'mirror image' copy of the hard drives of all Jinfei computers used by Mr. Ren and Mr. Ge from 2011-2016" for Plaintiffs' inspection; "(2) to produce any and all documents . . . reflecting a business relationship between Jinfei and Americana; (3) permit Plaintiffs to reconvene the deposition of Mr. Ren; (4) pay Plaintiffs' fees and other expenses; and (5) all other just and proper relief." [DE 75 at 3]. In their response to Defendants' motion for summary judgment on January 23, 2018, Plaintiffs then incorporated the instant motion to compel as part of its argument for further discovery under Fed. R. Civ. P. 56(d) as to their trademark infringement claim and all claims alleged against Ge. [DE 87 at 7]. Notably, Plaintiffs presented no substantive arguments against summary judgment on these claims.

## 2.    Analysis

Plaintiffs argue that additional discovery should be allowed under both Fed. R. Civ. P. 37 and Fed. R. Civ. P. 56(d). The Court is not persuaded under either standard.

### a.    Rule 37 Motion to Compel

Motions to compel under Rule 37 are premised on the general discovery rules, which allow discovery into

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). This Court has broad discretion in deciding whether to compel discovery and may deny discovery to protect a party from oppression or undue burden. Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th Cir. 1996). When ruling on a motion to compel, "a district court should independently determine the proper course of discovery based upon the arguments of the parties." *Gile* 95 F.3d at 496. A party objecting to discovery retains the burden to show why the discovery request is improper. *U.S. v. 58.16 Acres of Land, more or less in* Clinton Cty., State of Ill., 66 F.R.D. 570, 572–73 (E.D. Ill. 1975).

Here, Plaintiffs filed the instant motion to compel based on contentions that Defendants failed to produce all documents, specifically the Americana documents, requested in Request 1-1; failed to produce a 30(b)(6) witness capable of addressing the noticed topics; and failed to timely supplement their discovery responses as ordered by this Court on October 30, 2017. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv); (a)(4); (b); (c). As to the Americana documents, Plaintiffs say they are relevant to the calculation of their

damages premised on sales generated by Jinfei's business resulting from AMA and Zou's introductions. Yet Zou testified that he did not introduce Jinfei to Americana bringing into question, if not eliminating, the possibility that Plaintiffs played any role at all in the profits generated through Jinfei and Americana's business relationship. As such, the relevance of the Americana documents to Plaintiffs' contract damages is questionable at best. Moreover, Plaintiffs already possess hundreds of Americana documents produced by Americana itself. Comparing Jinfei's production to Americana's for completeness is not a sufficient reason at this late stage of litigation to reopen discovery.

As to Ren's deposition, Plaintiffs' assertion that he was evasive in his answers or otherwise unprepared to address noticed topics must be balanced against other facts. First, the deposition transcript shows that Plaintiffs' counsel did not ask Ren questions about most of the non-party documents in its possession, including the Americana documents. Second, Plaintiffs' counsel had time to review the four-page spreadsheet produced right before the depositions, but did not. And third, Plaintiff merely speculates without support that Ren had or should have had information Plaintiffs want. Additionally, a Rule 30(b)(6) witness is not unqualified if he cannot remember everything or is not completely knowledgeable about every question asked. *E.E.O.C. v. Celadon Trucking Servs., Inc.*, No. 1:12-CV-275-SEB-TAB, 2013 WL 5915206, at *1 (S.D. Ind. Nov. 1, 2013).

As to the Court's order dated October 30, 2017, there is no dispute that neither Defendants nor Plaintiffs served any supplemental discovery responses by the Court's

November 6th deadline. Yet parties cannot produce what they do not have. Here, Defendants produced what they found as soon as they found it. While the dates on Defendants' documents produced later in November 2017 suggest that they should have known they existed long before they were produced, Defendants have reasonably explained challenges that prevented the documents from being identified sooner. Moreover, Plaintiffs have produced no evidence of bad faith by Defendants.

Most importantly, Plaintiffs have not demonstrated any undue prejudice arising from these discovery issues. In fact, Plaintiffs' counsel ended Ren's deposition earlier than required and did not inquire about some of the arguably relevant documents Defendants had produced before the deposition. Plaintiffs even waited until after the close of discovery and the filing of two motions for summary judgment before seeking the Court's assistance on a discovery dispute brewing since the fall of 2016. *Cf. Murata Mfg. Co. v. Bel Fuse, Inc.,* 242 F.R.D. 470, 475 (N.D. Ill. 2007) ("[M]otions to compel filed after the close of discovery are almost always deemed untimely.") (citing *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 647 (7th Cir. 2001)). Accordingly, Plaintiffs have contributed to any predicament they sense.

Plaintiffs also seek to increase unnecessarily the time and costs of discovery by requesting, for the first time, the creation of mirror images of Ren's and Ge's computers. Such a request would likely have been deemed unduly burdensome even if raised at the beginning of litigation given the international concerns this type of request presents, the overly broad disclosure of unrelated Jinfei information it would require, and the high, if not prohibitive, costs to all parties of reviewing and organizing the information on the

computers. As a result, reopening discovery at this time would be both unduly burdensome and disproportional to the needs of the case.

### b. Rule 56(d) Request of Discovery

Under Fed. R. Civ. P. 56(d), the court may delay ruling on a motion for summary judgment if the non-movant can "affirmatively demonstrate[e] why [it] cannot respond to a movant's affidavits . . . and how postponement of a ruling on the motion will enable [it], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984) (quotations omitted). "A party seeking the protection of [Rule 56(d)] must make a good faith showing that it cannot respond to the movant's affidavits." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 (7th Cir. 2000). The non-movant must also identify the material facts that he anticipates discovery. *See Grundstad v. Ritt*, 166 F.3d 867, 873 (7th Cir. 1999) ("A party . . . may not use [Rule 56(d)] to gain a continuance where he has made only vague assertions that further discovery would develop genuine issues of material fact." (quotations omitted)).

Through his Affidavit dated January 22, 2018, Plaintiffs' counsel states that "Plaintiffs are unable to present facts essential to justify its opposition to Defendants' Motion for Summary Judgment as to <u>Count VII: Federal Trademark Infringement and False Designation of Origin</u> and as to all counts and claims against Defendant Bingzao Ge." [DE 87-1 at 3, ¶ 3]. By invoking Plaintiffs' instant motion to compel, Plaintiffs' counsel avers that Defendants are responsible for Plaintiffs' inability to defend against summary judgment on these matters because of their alleged "withhold first, product

later if caught" approach to discovery. While Plaintiffs' counsel's Affidavit recites the language of Rule 56(d), neither the Affidavit nor Plaintiffs' briefing of either the motion to compel or the motion for summary judgment provide the substantive support necessary to justify delaying resolution of Defendants' motion for summary judgment.

First, Plaintiffs have not demonstrated good cause for their counsel's decisions not to review the relevant four-page spreadsheet before Ren's deposition, not to pursue the "use in commerce" issue relevant to Plaintiffs' trademark infringement claim at Ren's deposition, and not to seek the Court's assistance on this critical discovery issue before the close of discovery or before motions for summary judgment were filed. As such, the Court is not persuaded that they were precluded from gathering facts to justify opposition to Defendants' motion for summary judgment.

Second, Plaintiffs suggest that the undisclosed Americana documents could include facts showing to show use in commerce of the Future International or Future Industrial marks as required to show trademark infringement. Similarly, Plaintiffs contend that Jinfei's internal emails could include facts relevant to use in commerce. Yet Plaintiffs already have a considerable number of Americana documents in hand and have not presented any "use in commerce" facts from those documents. Moreover, Both Ren and Zou testified at their depositions that neither Future International nor FIT ever engaged in business, suggesting that both companies are essentially shells without assets, employees, or customers.

Plaintiffs seem to be searching for a "smoking gun" on an issue that could have and should have been a central focus of discovery much sooner. Additionally, a

reasonable jury could, and likely would, rely on other evidence in the record, namely Zou's own testimony, to overcome Plaintiffs' "use in commerce" argument. Thus, the Court is not persuaded that the additional discovery Plaintiffs seek will give rise to a genuine dispute of material fact.

### 3.    Conclusion

Upon consideration of both the Fed. R. Civ. P. 37 and Fed. R. Civ. P. 56(d) standards, the Court **DENIES** Plaintiffs' motion to compel. [DE 75]. Discovery remains closed as of November 28, 2017. The Court will proceed to address the pending motions for summary judgment. No award of costs, including attorney fees, for the instant motion to compel is granted. The parties shall bear their own costs.

### D.    Motions for Summary Judgment

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore,* 351 F.3d 278, 282 (7th Cir. 2003).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex*, 477 U.S. at 322–23; *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## 1. Defendants' Motion for Partial Summary Judgment

As mentioned above, Defendants, Jinfei, FIT, and Ge, seek summary judgment on some of Plaintiffs' claims, specifically (1) Count V, unjust enrichment against Jinfei only; (2) Count VI, unfair competition under state and federal law against Jinfei, FIT and Ge; and (3) Count VII, trademark infringement and false designation of origin against Jinfei, FIT, and Ge.

### a. Trademark Infringement and Unfair Competition against Jinfei, FIT, and Ge

To succeed on a trademark infringement claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), plaintiffs must demonstrate that: "(1) the [] marks

[they assert] are protectable; (2) Defendants have used the marks in commerce; and (3) their use of the term is likely to cause confusion." *Kastanis v. Eggstacy LLC*, 752 F. Supp. 2d 842, 848 (N.D. Ill. 2010) (citing *Ty Inc. v. Jones Group Inc.*, 237 F.3d 891, 897 (7tfh Cir. 2001)); *see also* 15 U.S.C. § 1114 (Lanham Act trademark infringement). To show that an unregistered mark, like Future International, is protectable, a plaintiff must establish the first actual use of the mark in commerce. *Purepecha Enters., Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012 WL 3686776, at *9 (N.D. Ill. Aug. 24, 2012) (citations omitted). As such, the key to Plaintiffs' infringement and false designation of origin claim under the Lanham Act is Plaintiffs' actual use in commerce of the Future International mark and Defendants' actual use in commerce of the FIT mark.

Defendants argue that summary judgment is warranted because Plaintiffs have not presented any evidence that the Future International or FIT marks were ever used in commerce. In response, Plaintiffs say nothing about the quantity or quality of evidence they have on the issue of "use in commerce." Instead, Plaintiffs ask the Court to allow further discovery under Fed. R. Civ. P. 56(d)—a request the Court denied above. Moreover, Zou testified at his deposition that Future International has never done business, including selling or transporting goods or rendering services as required under the Lanham Act to establish use in commerce. *See* 15 U.S.C. § 1127. Similarly, Ren testified that the FIT mark had never been used. Therefore, Plaintiffs have not established (and based on this record, cannot establish) a genuine dispute of material fact as to use in commerce entitling Defendants to judgment as a matter of law on

Plaintiffs' trademark infringement and false designation of origin claim under the Lanham Act.

The "use in commerce" element is also essential in the analysis of Plaintiffs' trademark infringement claim under the Indiana Trademark statute and their unfair competition claims.[2] *See Heckler Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 924 (S.D. Ind. 2014) (citing Ind. Code § 24-2-1-13(1)); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 926 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014) ("[I]t is well established that [trademark] infringement, federal unfair competition, and state unfair competition . . . are analyzed under the same trademark infringement analysis."). As a result, Plaintiffs' failure to present evidence to show a genuine dispute of material fact as to the use in commerce of the Future International or FIT marks also dooms any state law trademark claim and any unfair competition claim at the federal or state level. Notably, Plaintiffs' state law trademark infringement claim also fails because the Future International mark is not registered with the State of Indiana as required under Ind. Code § 24-2-1-13(1).

---

[2] Indeed, "any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for that of another, constitutes actionable unfair competition." *Hartzler v. Goshen Churn & Ladder Co.*, 104 N.E. 34, 37 (Ind. App. 1914). Consistent with the *Hartzler* definition of unfair competition, "federal courts have interpreted Indiana's law on unfair competition as an attempt to create confusion as to the source of the unfair competitor's goods." *Hammons Mobile Homes, Inc. v. Laser Mobile Home Transp., Inc.*, 501 N.E.2d 458, 461 (Ind. Ct. App. 1986) (citing *Westward Coach Mfg. Co. v. Ford Motor Co.* (7th Cir. 1968), 388 F.2d 627, 633, *cert. denied*, 392 U.S. 927 (1968); *Terry v. Int'l Dairy Queen, Inc.*, 554 F. Supp. 1088, 1098 (N.D. Ind. 1983)). The centrality of the likelihood of confusion to both the trademark infringement and the unfair competition claims make it understandable that the same analysis applies, including the element of "use in commerce." *See Heckler Koch, Inc.*, 71 F. Supp. 3d at 924; *Fortres Grand Corp.*, 947 F. Supp. 2d at 926.

Plaintiffs' argument that their unfair competition claims are based on different facts than their trademark infringement claims does not save the unfair competition claims from summary judgment. While Plaintiffs outline with great specificity the facts suggesting that deception was the natural and probable consequence of Jinfei's conduct in relation to FIT and Future International, those facts also support their overarching allegations in their trademark infringement claim that FIT adopted its name to confuse consumers and that the FIT name is confusingly similar to Future International. Thus, with the same facts at issue and no evidence of use in commerce to establish the likelihood of confusion necessary for the unfair competition claims, any facts that remain in dispute will not affect the outcome of the unfair competition claims making them immaterial. Accordingly, Defendants are entitled to judgment as a matter of law on all of Plaintiffs' trademark infringement and unfair competition claims in Counts VI and VII of the amended complaint.

Therefore, the Court **GRANTS IN PART** Defendants' motion for partial summary judgment as to Plaintiffs Count VI for Unfair Competition and Count VII for Trademark Infringement and False Designation of Origin. [DE 73]. With no further claims against FIT or Ge, both are completely dismissed from this action.

Lastly, the Court **NOTES** that subject matter jurisdiction originated in this case from Plaintiffs' federal Lanham Act claims, none of which have survived summary judgment. Nevertheless, the Court will continue to exercise supplemental jurisdiction over the remaining state law claims in this action because substantial federal judicial resources have been expended on this case in the last three years and remanding this

case would cause unnecessary inefficiencies. *See* 28 U.S.C. § 1367(c)(3); *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007); *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). Arguably, subject matter jurisdiction based on a diversity of citizenship now exists as well because the amount in controversy in this action exceed $75,000 and only Jinfei, the only citizen of China in this action, remains as Defendant, Counterclaimant, and Third-Party Plaintiff.

### b. Unjust Enrichment against Jinfei

Unjust enrichment is a common law remedy where there is no contract, but "where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise." *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind. 1991). Accordingly, a claim for unjust enrichment is not cognizable when the parties' conduct is governed by an express contract. *Town of New Ross v. Ferretti,* 815 N.E.2d 162, 168 (Ind. App. 2004); *DiMizio v. Romo,* 756 N.E.2d 1018, 1025 (Ind. App. 2001). "Nonetheless, plaintiffs seeking recovery for breach of contract often plead unjust enrichment in the alternative, because this theory allows for the possibility of recovery even if the court finds that no contract existed or that a contract existed but was unenforceable." *CoMentis, Inc. v. Purdue Research Found.,* 765 F. Supp. 2d 1092, 1101–02 (N.D. Ind. 2011) (internal quotation and citation omitted).

Here, Jinfei contends that AMA's unjust enrichment claim is improper because the conduct underlying the claim is the same conduct governed by the parties' contracts. Additionally, Jinfei argues that Plaintiffs did not properly plead unjust enrichment in the alternative. "To plead in the alternative, a plaintiff must claim *both*

that a contract was breached and that a contract did not exist but equity demands that the injury be compensated." *Id.* at 1103. "A party cannot pursue equitable relief simply because its contract claim fails, without alternatively alleging that there was either no contract on point or the contract at issue was unenforceable." *Id.* AMA contends that it has successfully done just that.

While agreeing that the conduct underlying the unjust enrichment claim is the same as the conduct underlying the breach of contract claims, AMA argues that the invalidity or unenforceability of the contracts can be inferred, in the alternative, from the fact that Future International did not raise the unjust enrichment claim against Jinfei. As AMA suggests, Future International would not exist if the contracts turn out to be invalid or unenforceable, a question the Court has not yet been required to resolve. Yet AMA will exist regardless of the status of the contracts. And there is no dispute that AMA performed services for Jinfei and was not compensated.

Accordingly, AMA's unjust enrichment can still coexist with Plaintiffs' breach of contract claims until such time the validity and enforceability of the contracts are determined. Therefore, the Court **DENIES IN PART** Defendants' motion for partial summary judgment as to AMA's Count V for Unjust Enrichment. [DE 73].

### 2. Counter-Defendant AMA's and Third-Party Defendant Zou's Motion for Partial Summary Judgment

Through the instant motion, AMA and Zou seek summary judgment on Jinfei's four counterclaims and third-party claims, specifically its First Counterclaim of breach of fiduciary duty against AMA; its Second Counterclaim of unjust enrichment against

AMA and Zou; its Third Counterclaim of conversion against AMA and Zou; and its Fourth Counterclaim of fraud against AMA and Zou. [DE 52 at 31–36].

### 1. Fraud against AMA and Zou

Jinfei's claim of fraud against AMA and Zou is based on allegations that Zou and AMA made false statements of material facts to Jinfei regarding their familiarity with and good will within the American auto parts industry and assorted matters regarding the legal, tax, and business environment in Indiana as well as their ability to "obtain various preferential treatments in tax and land use" based on Zou's relationship with Indiana officials and agencies. [DE 52 at 34]. Jinfei also alleges that it relied upon these statements in deciding to partner with AMA and Zou in its efforts to initiate business as a foreign company in the United States.

AMA and Zou now seek summary judgment on Jinfei's fraud claim based on its contention that Jinfei has not presented any evidence that Zou misrepresented anything in his conversations with Jinfei. Liability for fraud requires intentional or reckless deceit that misleads another. *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 628 (Ind. Ct. App. 1983). To prove fraud, a plaintiff must establish

> "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of."

*Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013).

Here, AMA and Zou contend that Zou told Jinfei he was familiar with aspects of the industry and community that would be of assistance in getting Jinfei's business

28

started. On the other hand, Jinfei alleges that Zou does not have the specialized knowledge or relationships in the Indiana legal, financial, governmental, and business environment that he reported to Jinfei and therefore that he lied to Jinfei. Instead, Jinfei alleges that Zou only had the knowledge of an average person that would have been insufficient for it to rely upon in its pursuit of entering the American parts industry. As such, a dispute of fact exists as to whether Zou's representations about his knowledge, expertise, and relationships in Indiana and the relevant American auto/RV industry were truthful. This dispute of fact, however, is not material to any determination of the misrepresentation element of Jinfei's fraud claim.

In its attempt to establish a genuine dispute of material fact, Jinfei cites the following facts: (1) Zou is not a licensed lawyer or accountant; (2) AMA and Zou concealed Indiana's professional licensing requirements from it; (3) neither AMA nor Zou had a previous relationship with prospective customer Americana, with whom Jinfei had a business relationship predating the Jinfei/AMA connection; (4) prospective customers and third-parties Lionshead Specialty Tire & Wheel, Inc. ("Lionshead") and HiSpec Wheels & Tires, Inc. ("HiSpec") submitted affidavits denying any previous relationship or interest in a business relationship with AMA or Zou; and (5) AMA and Zou are not governmental employees or contractors. [DE 91 at 8–12]. What is missing from the record, however, is any evidence that Zou told Jinfei he was a licensed attorney or accountant or a government employee. Similarly, nothing in the record suggests that a license was required for Zou to offer his insights to a business partner based on his own experience with legal, tax, or governmental matters as a business

owner. Therefore, failure to disclose such licensing requirements is irrelevant to whether or not Zou misrepresented his expertise to Jinfei.

Additionally, Jinfei has produced no evidence that AMA and Zou claimed to have relationships with every company in the vehicle parts industry. Accordingly, AMA's and Zou's lack of relationship with Americana, Lionshead, and HiSpec does not conflict with the representation that they maintained relationships in the industry. As a result, the facts cited by Jinfei may be disputed, but are not sufficient for a reasonable jury to find that AMA and Zou intentionally or recklessly misrepresented facts about Zou's experience, expertise, or relationships. Therefore, any disputed interpretation of Zou's statements to Jinfei about his credentials to assist in its business expansion are not material to the misrepresentation element of the fraud claim.

Due to Jinfei's failure to present evidence to establish a genuine dispute of material fact as to misrepresentation element, AMA and Zou are entitled to judgment as a matter of law on Jinfei's fraud claim. Accordingly, the Court **GRANTS IN PART** AMA and Zou's motion for partial summary judgment as to Jinfei's Fourth Counterclaim of fraud. [DE 69].

### 2. Breach of Fiduciary Duty against AMA

Generally speaking, Jinfei alleges in its First Counterclaim that it was harmed because AMA, as Jinfei's agent in the Future International project, breached its fiduciary duty by (1) failing to release its control over Future International; (2) failing to provide support to Jinfei and its employees as promised; and (3) failing to provide a detailed accounting of how it spent Jinfei's $30,000 and diverting benefits gained to itself rather

than Jinfei. [DE 52 at 31–32]. "[A] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of that duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Rapkin Grp., Inc. v. Cardinal Ventures, Inc.*, 29 N.E.3d 752, 757 (Ind. Ct. App. 2015) (internal citation omitted). Here, AMA seeks summary judgment on Jinfei's breach of fiduciary duty claim by solely alleging that a fiduciary relationship did not exist between them.

AMA's argument is premised on its interpretation that Jinfei is alleging breach of fiduciary duty in its own capacity rather than on behalf of Future International. On first glance, this makes sense as Jinfei alleges a partnership and agency in its first allegation in the counterclaim: "As a result of AMA's partnership with Jinfei, AMA essentially acted as Jinfei's agent in their joint investment project." [DE 52 at 31, ¶ 47]. Yet Jinfei also alleged a fiduciary duty in direct relation to Future International in the same paragraph when it stated that

> AMA owed a fiduciary duty to Jinfei, including, but not limited to, the duty of undivided loyalty, the duty to act with the utmost good faith and honesty toward Jinfei, and the duty to disclose to Jinfei all facts within AMA's knowledge that were material to the operation and management of Future International.

[*Id.*]. Thus, AMA's argument here that Jinfei is alleging breach of fiduciary duty in its individual capacity rather than as a member of Future International is not clearly supported by the pleading or the parties' briefing of the instant motion.

And more curiously, AMA admitted in its answer to the counterclaim "that Jinfei and AMA were in a fiduciary relationship" while denying the remaining allegations. [DE 54 at 21, ¶ 47]. Consistent with that answer, AMA argues in the instant motion that

it was not an agent of Jinfei in an attempt to support its assertion that a fiduciary

relationship did not exist. Yet AMA's admission in that very same answer that it was in

a fiduciary relationship with Jinfei conflicts directly with this conclusion. The

contradiction is even starker when compared to AMA's own allegation, as part of its

own breach of fiduciary duty claim against Jinfei in its First Amended Complaint. AMA

pleaded that "[a]s partners in a joint venture and co-members in an LLC, AMA and

Jinfei were in a fiduciary relationship." [DE 14 at 8, ¶ 38].

"Judicial admissions are formal concessions in the pleadings, or stipulations by a

party or its counsel, that are binding upon the party making them." *Keller v. United

States*, 58 F.3d 1194, 1199 (7th Cir. 1995). "[T]hey are not evidence at all but rather have

the effect of withdrawing a fact from contention." *Id.* (internal quotation and citations

omitted). "A judicial admission is conclusive, unless the court allows it to be

withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or

explained by the party." *Id.*

In two of its pleadings, the First Amended Complaint and the answer to Jinfei's

counterclaim, AMA admitted that it was in a fiduciary relationship with Jinfei. These

concessions in AMA's pleadings constitute judicial admissions and are therefore

binding on AMA unless the Court would allow them to be withdrawn. Yet, despite

having the opportunity to do so, AMA makes no argument that withdrawal is

warranted.

Regardless of AMA's judicial admissions, officers and members of Indiana LLCs,

like Future International, share a common law fiduciary duty absent contrary

provisions in the LLC's operating agreements. *See Purcell v. S. Hills Invs., LLC*, 847 N.E.2d 991, 996 (Ind. App. 2006). Here, Jinfei and AMA are the only members of Future International, LLC, creating just such a common law fiduciary relationship. AMA did not address this legal reality in its reply brief either.

Nevertheless, AMA argues that it was not the agent of Jinfei and that consequently, no fiduciary relationship existed between them. Indeed, "[a] confidential or fiduciary relationship [can exist] when confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *Strong v. Jackson*, 777 N.E.2d 1141, 1148 (Ind. Ct. App. 2002) (internal quotation and citation omitted). However, an arms' length business relationship between two business partners may not translate into a fiduciary relationship despite a certain amount of trust between them. *Iom Grain, LLC v. ZEA Global Seeds, SA*, Cause No. 1:10-CV-337-TLS, 2011 WL 5006314, at *12 (N.D. Ind. Oct. 20, 2011).

In *Iom Grain*, this Court carefully analyzed the full range of facts surrounding the parties' business relationship before determining that a fiduciary relationship did not exist because neither party dominated or controlled the activity of the other. *Id.* Yet the business partners in *Iom Grain* were not co-members of an LLC nor had any party admitted in its pleadings that a fiduciary relationship existed. Therefore, the agency-based analysis was necessary and appropriate. Here, AMA does not even attempt to explain why its agency-based argument should supplant its own judicial admissions or its fiduciary relationship with Jinfei arising from their status as co-members of Future International. As a result, the Court is not persuaded to allow AMA to withdraw its

judicial admissions or to ignore the fiduciary relationship inherit in its LLC membership. While a direct agency relationship may or may not exist between Jinfei and AMA, a fiduciary relationship definitely does.

Therefore, AMA is not entitled to judgment as a matter of law on Jinfei's breach of fiduciary duty counterclaim. To resolve the remaining elements of Jinfei's counterclaim, it may be necessary for a finder to fact at trial to determine which party shall succeed. Accordingly, the Court **DENIES IN PART** AMA's motion for partial summary judgment [DE 69] as to Jinfei's First Counterclaim of breach of fiduciary duty.

### 3. Conversion against AMA and Zou

In its Third Counterclaim for conversion against AMA and Zou, Jinfei alleges that they "have obtained, and continue to retain, the benefit of the $30,000 that was wired by Jinfei (such as the leased pick up truck), including any remaining sums of money." [DE 52 at 33, ¶ 59]. "Conversion, as a tort, consists either in the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor." *Computers Unlimited, Inc. v. Midwest Data Sys., Inc.*, 657 N.E.2d 165, 171 (Ind. Ct. App. 1995). "Where the initial possession is lawful, conversion occurs only after an unqualified demand for return." *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind. Ct. App. 1983).

In this case, Jinfei cannot succeed on its conversion counterclaim unless it can prove that AMA and Zou obtained the $30,000 at issue illegally and that it made an unqualified demand to AMA and Zou for return of the $30,000. In their motion for

34

partial summary judgment, AMA and Zou argue that Jinfei can prove neither and that they are therefore entitled to judgment as a matter of law on the conversion counterclaim. Yet Jinfei contends that a genuine dispute of material fact exists as to both elements. Specifically, Jinfei argues that AMA and Zou's alleged fraud, discussed above, creates a genuine dispute of material fact as to whether AMA lawfully came into possession of the $30,000.

No doubt, it is unlawful to come into possession of something by fraud. *See Kollar v. State*, 556 N.E.2d 936, 939 (Ind. Ct. App. 1990), *disapproved of by Jackson v. State*, 50 N.E.3d 777 (Ind. 2016) ("a conviction of theft by false pretenses under IC 35-43-4-1(b)(4) requires a showing that misrepresentations as to past or present facts were made in order to gain possession of another's property"). Yet the Court already granted summary judgment as to Jinfei's Fourth Counterclaim of fraud above. With no genuine dispute of material fact as to the alleged fraud, Jinfei has not established a genuine dispute of material fact as to whether AMA and Zou possessed the $30,000 lawfully. Therefore, AMA and Zou are entitled to judgment as a matter of law on Jinfei's conversion counterclaim regardless of whether a genuine dispute of material fact exists as to Jinfei's unqualified demand for return of the $30,000.

Accordingly, the Court **GRANTS IN PART** AMA and Zou's motion for partial summary judgment as to Jinfei's Third Counterclaim of conversion. [DE 69].

### 4. Unjust Enrichment against AMA and Zou

Through its Second Counterclaim for unjust enrichment against AMA and Zou, Jinfei once again seeks a remedy for what it believes to be AMA's and Zou's

exploitation and retention of benefits from the $30,000 Jinfei wired to them to obtain and pay leases pursuant to their contracts. As discussed thoroughly above, parties cannot recover on the equitable theory of unjust enrichment, or *quantum meruit*, when a contract controls the rights of the parties. *See Town of New Ross,* 815 N.E.2d at 168; *DiMizio,* 756 N.E.2d at 1025. A contract, however, must address the "identical subject" raised in the unjust enrichment claim to preclude liability under the equitably theory. *Engelbrecht v. Prop. Developers, Inc.,* 296 N.E.2d 798, 801 (Ind. Ct. App. 1973); *see also Eagle Aircraft, Inc. v. Trojnar,* 983 N.E.2d 648, 660 (Ind. Ct. App. 2013) (concluding that unjust enrichment did not apply because the contract between the parties governed their relationship and set forth terms addressing the benefit at the heart of the unjust enrichment claim).

Here, the parties dispute whether their contracts governed Jinfei's provision of the $30,000 specifically and whether the contracts required AMA and Zou to return any unused sums from the $30,000. AMA and Zou's reliance on *Eagle Aircraft* to support their contention that the parties' contracts governed their conduct generally and therefore precludes any equitable remedy like unjust enrichment does not overcome this dispute over the scope of the contracts. First, *Eagle Aircraft* is premised on a contract that governed the benefit for which compensation through an equitable remedy was sought. 983 N.E.2d at 660.

Second, AMA and Zou have not demonstrated that the contracts dictated the logistics of funding the apartment and vehicle leases. For instance, the contracts generally require AMA and Zou to secure the leases and for Jinfei to cover those costs,

but do not specify how much could be spent, how or when Jinfei would cover the costs incurred by AMA and Zou, or how AMA and Zou would be required to handle any money received including the return of unused sums. With such general contract terms, it is unclear whether the conduct at issue in Jinfei's unjust enrichment counterclaim is indeed covered by the contracts. As such it would be premature to preclude Jinfei's counterclaim based on the contracts alone. Nevertheless, the Court can give Jinfei the benefit of the doubt here as the nonmovant and assume for the sake of argument that the unjust enrichment counterclaim is not precluded by the parties' contracts.

Should the Court get to the merits of the counterclaim, however, Jinfei's unjust enrichment counterclaim cannot succeed. "To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Sonnenburg*, 573 N.E.2d at 408. In response to AMA and Zou's motion for partial summary judgment, Jinfei has provided no evidence that AMA and Zou received any measurable benefit from the $30,000. In fact, Jinfei does not even mention Zou's affidavit, which AMA and Zou cited in their motion for partial summary judgment. In his affidavit, Zou delineated expenditures "to benefit and further the purposes of Future International" totaling $48,663.00 and averred that "[n]either [Zou] nor AMA personally received any benefit from the $30,000 because all of it was spent to benefit Future International." [DE 69-2 at 9, ¶¶ 32–33]. Furthermore, Jinfei offers no rebuttal to Ren's Rule 30(b)(6) deposition testimony that Jinfei "cannot identify an improper usage of the money by Mr. Zou, and that Jinfei doesn't remember seeing

receipts and invoices memorializing the legitimate expenses Mr. Zou accrued on behalf of Jinfei/Future International." [DE 71 at 31 (citing DE 70 at 23, 85:17–86:13)].

Instead, Jinfei relies solely on the contractual argument discussed above to advocate for the survival of its unjust enrichment counterclaim. While a win here based on the contractual argument would keep Jinfei's unjust enrichment counterclaim alive, it would not ensure success for Jinfei on the counterclaim. Jinfei would be still be required to present sufficient evidence to show the existence of each element of the claim to survive summary judgment. *See Celotex,* 477 U.S. at 322–23; *Robin,* 200 F.3d at 1088. By failing to present evidence that AMA and Zou benefitted personally from the $30,000, none of which remains unused based Zou's Affidavit, Jinfei has not met its burden. *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co.,* 475 U.S. at 587.

Therefore, there remains no genuine dispute of material fact and AMA and Zou are entitled to judgment as a matter of law. Accordingly, the Court **GRANTS IN PART** AMA and Zou's motion for partial summary judgment [DE 69] as to Jinfei's Second Counterclaim of unjust enrichment.

### III.    CONCLUSION

For the reasons discussed above, the Court now

(1)    **OVERRULES** all of Defendants' evidentiary objections [DE 85, 90, 92, 98];

(2)    **DENIES** Defendants' Renewed Motion for Sanctions [DE 72];

(3)    **DENIES** Plaintiffs' motion to compel [DE 75];

(4)    **GRANTS IN PART** and **DENIES IN PART** AMA and Zou's Motion for Partial Summary Judgment [DE 69]; and

(5)     **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for
        Partial Summary Judgment [DE 73].

The Clerk is **DIRECTED** to enter judgment in favor of AMA and Zou on Jinfei's

Second Counterclaim of Unjust Enrichment, Third Counterclaim of Conversion, and

Fourth Counterclaim of Fraud as pled in Defendants' First Amended Answer to First

Amended Complaint, Third-Party Complaint and Counterclaims [DE 52]. The Clerk is

**DIRECTED** to enter judgment in favor of Defendants on Plaintiffs' claims for Unfair

Competition (Count VI) and Trademark Infringement and False Designation of Origin

(Count VII) in their First Amended Complaint [DE 14].

With all claims dismissed against them, Future Industrial & Trading, Inc.,

Bingzao Ge, and Aaron Zou are terminated as parties in this action.

As an ancillary matter, the Court **NOTES** that AMA and Zou filed three exhibits

[DE 70, 70-1, 70-2] related to its motion for partial summary judgment and two exhibits

[DE 76, 76-1] related to its motion to compel under seal without the Court's permission.

The Court must determine whether good cause exists to seal any part of the record of a

case because it is in the public interest to keep court proceedings publicly accessible. *See*

*Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999).

"Information that affects the disposition of litigation belongs in the public record unless

a statute or privilege justifies nondisclosure." *United States v. Foster*, 564 F.3d 852, 853

(7th Cir. 2009). Without supporting authority or a showing of good cause that the

exhibits at issue should be protected from disclosure to the public, the Court **ORDERS**

Plaintiffs to submit a brief including authority and good cause for sealing the

documents by **July 6, 2018**. Defendants may file any response by **July 13, 2018**. No further briefing will be accepted.

And, lastly, as explained above, the Court invokes Fed. R. Civ. P. 11(c)(3) and **ORDERS** Defendants' counsel to show cause by **June 29, 2018**, why the Court should not find that the Renewed Motion for Sanctions [DE 72] was presented for an improper purpose as prohibited under Fed. R. Civ. P. 11(b)(1) and should not impose monetary sanctions accordingly.

**SO ORDERED.**

Dated this 20th day of June 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge